**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DUWAYNE BLAKE,

                      Petitioner,

      - against -

SCOTT MECHKOWSKI, as Assistant Field Office
Director, New York City Field Office, U.S. Immigration
& Customs Enforcement, *et al.*,

                    Respondents.

15 Civ. 2724 (RA)

---

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO THE PETITION FOR WRIT OF HABEAS CORPUS**

PREET BHARARA
United States Attorney for the
Southern District of New York
*Attorney for Respondents*
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2761

CHRISTOPHER CONNOLLY
Assistant United States Attorney
   – Of Counsel –

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

    FACTUAL AND PROCEDURAL BACKGROUND.....................................................3

        A.     Blake's Criminal History and Removal Proceedings .................................3

        B.     Blake's Habeas Petition .............................................................................5

    STATUTORY BACKGROUND ...................................................................................5

        A.     The Mandatory Detention Statute, INA § 236(c) .....................................5

        B.     The BIA's Interpretation of Section 236(c) in *Matter of Rojas* .................7

ARGUMENT—BLAKE'S HABEAS PETITION SHOULD BE DENIED................................10

    A.     Blake is Subject to Mandatory Detention under *Matter of Rojas* .........................10

        1.     Section 236(c) is Ambiguous....................................................................11

        2.     *Matter of Rojas* Warrants Deference Because the BIA's
              Interpretation of Section 236(c) is Reasonable..........................................13

        3.     The Government Has a Continuous Statutory Duty to Impose
              Mandatory Detention Despite a Gap in Custody .....................................16

    B.     Blake Was "Released" from Custody for Purposes of Section 236(c) .................17

    C.     The Rule of Lenity Is Inapplicable ........................................................21

    D.     The Applicability of Section 236(c) Is Not Affected By Blake's Purported
          "Substantial Challenge to Removability" ................................................22

    E.     Blake's Detention Does Not Violate Due Process................................................23

    CONCLUSION……………………………………………………………………… 26

## TABLE OF AUTHORITIES

**Cases:**                                                                                                          **Page**

*Adler v. U.S. Dep't of Homeland Sec.,*
    No. 09 Civ. 4093 (SAS), 2009 WL 3029328 (S.D.N.Y. Sept. 22, 2009) ....................25, 26

*Andreenko v. Holder,*
    No. 09 Civ. 8535 (CM)(JCF), 2010 WL 2900363 (S.D.N.Y. June 25, 2010) ..................25

*Araujo-Cortes v. Shanahan,*
    35 F. Supp. 3d 533 (S.D.N.Y. 2014) .............................................................................12

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) .............................................................................................. *passim*

*Debel v. Dubois,*
    No. 13 Civ. 6028 (LTS)(JLC), 2014 WL 1689042 (S.D.N.Y. Apr. 24, 2014) ..............9, 25

*Demore v. Kim,*
    538 U.S. 510 (2003) .............................................................................................. *passim*

*Diop v. ICE,*
    656 F.3d 221 (3d Cir. 2011) .........................................................................................24

*Doherty v. Thornburgh,*
    943 F.2d 204 (2d Cir. 1991) ........................................................................................26

*Gomez v. Napolitano,*
    No. 11 Civ. 1350 (JSR), 2011 WL 2224768 (S.D.N.Y. May 31, 2011) .................9, 12, 14

*Guillaume v. Muller,*
    No. 11 Civ. 8819 (TPG), 2012 WL 383939 (S.D.N.Y. Feb 7, 2012) ..........................9, 15

*Hosh v. Lucero,*
    680 F.3d 375 (4th Cir. 2012) .................................................................................. *passim*

*John Hancock Mutual Life Insurance Co. v. Harris Trust & Sav. Bank,*
    510 U.S. 86 (1993) .......................................................................................................17

*Johnson v. Orsino,*
    942 F. Supp. 2d 396 (S.D.N.Y. 2013) .................................................................... *passim*

*Johnson v. Phillips,*
    No. 10-CV-480 (HBS), 2010 WL 6512350 (W.D.N.Y. Dec. 20, 2010) .........................25

*Luna-Aponte v. Holder*,
    743 F. Supp. 2d 189 (W.D.N.Y. 2010) ..........................................................................25

*Mendoza v. Muller*,
    No. 11 Civ. 7857 (RJS), 2012 WL 252188 (S.D.N.Y. Jan. 25, 2012) .........................9, 16

*Miller v. Decker*,
    No. 15 Civ. 471 (PKC), 2015 WL 1433276 (S.D.N.Y. Mar. 30, 2015) .............................9

*National Cable & Telecommunication Association v. Brand X Internet Services*,
    545 U.S. 967 (2005) ......................................................................................................12

*Matter of Noble*,
    21 I. & N. Dec. 672 (BIA 1997) .................................................................................7, 14

*Olmos v. Holder*,
    780 F.3d 1313 (10th Cir. 2015) .......................................................................... *passim*

*Matter of Rojas*,
    23 I. & N. Dec. 117 (BIA 2001) ........................................................................ *passim*

*Romero v. Shanahan*,
    No. 14 Civ. 6631 (KBF), 2014 WL 6982937 (S.D.N.Y. Dec. 10, 2014) ...............9, 23, 24

*Santana v. Muller*,
    No. 12 Civ. 430 (PAC), 2012 WL 951768 (S.D.N.Y. Mar. 12, 2012) ...............................9

*Straker v. Jones*,
    986 F. Supp. 2d 345 (S.D.N.Y. 2013) ................................................................. *passim*

*Sulayao v. Shanahan*,
    No. 09 Civ. 7347 (PKC), 2009 WL 3003188 (S.D.N.Y. Sept. 15, 2009) .......................10

*Sylvain v. Attorney General of the United States*,
    714 F.3d 150 (3d Cir. 2013) .............................................................................. *passim*

*United States v. Montalvo-Murillo*,
    495 U.S. 711 (1990) ....................................................................................................8, 15

*Young v. Aviles*,
    14 Civ. 9531 (JMF), 2015 WL 1402311 (S.D.N.Y. Mar. 26, 2015) .............................9, 14

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ....................................................................................................24, 25

## PRELIMINARY STATEMENT

Respondents Scott Mechkowski, Christopher Shanahan, Jeh Johnson, and Loretta Lynch, (collectively, "respondents" or the "Government"),[1] by their attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the petition for a writ of habeas corpus (the "Petition") (Dkt. # 1) filed by petitioner Duwayne Blake.

Blake, a native and citizen of Jamaica, is currently in removal proceedings based on his 2012 narcotics conviction. United States Immigration and Customs Enforcement ("ICE") has determined that Blake's conviction and corresponding removal charge render him subject to mandatory detention under section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), which directs ICE to detain certain categories of criminal aliens without bond pending the outcome of their removal proceedings.

In his Petition and accompanying memorandum of law ("Pet. Br.") (Dkt. # 8), Blake argues that section 236(c) does not apply to him because (i) ICE did not detain him immediately following his criminal conviction, but instead detained him more than two years later in connection with his removal proceedings, and (ii) he did not receive a post-conviction custodial sentence in connection with his removable offense, and therefore was never "released" within the meaning of the statute. Blake further argues that he is not subject to detention under section 236(c) because his conviction purportedly was not for a removable offense, and ICE is allegedly unlikely to prevail in his removal proceedings. Finally, Blake claims that his detention violates

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Loretta Lynch is substituted as a respondent in place of former Attorney General Eric Holder. Further, Blake fails to name a proper respondent in this matter because none of the named respondents are his "immediate custodian." *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

due process because he allegedly is not a flight risk or a danger to the community, and because his detention has been prolonged.

Blake's petition should be denied. Section 236(c) directs ICE to take certain criminal aliens into custody "when the alien is released" from criminal custody, 8 U.S.C. § 1226(c)(1), and to detain those aliens without bond pending a decision in their removal proceedings, *id.* § 1226(c)(2). The Board of Immigration Appeals ("BIA"), whose precedent decisions seek to achieve nationwide uniformity and are binding on the immigration authorities, has interpreted section 236(c) to apply to all criminal aliens who are removable for having committed one or more of the serious offenses enumerated in the statute without regard to the timing of their immigration detention, rather than only to those criminal aliens whom ICE detains immediately upon their release from criminal custody. *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001). Accordingly, the Court should conclude that Blake is subject to mandatory detention even though ICE did not detain him immediately following his criminal conviction. Moreover, Blake is properly subject to mandatory dentation under section 236(c) because his release from pre-conviction custody in connection with his removable offense satisfies the statute's "release" requirement.

Blake's remaining arguments also fail. First, the IJ presiding over Blake's removal proceedings has already found that his 2012 conviction renders him removable and subject to mandatory detention and, in any event, a challenge to Blake's removability does not preclude his detention under section 236(c). Second, Blake does not state a due process claim merely because he claims to present no flight risk or danger to the community; instead, the Supreme Court has held that a conviction for an offense enumerated in section 236(c) categorically serves as a proxy for flight risk and dangerousness. Finally, the length of Blake's detention does not violate due process. The Supreme Court has not set an outer limit for the constitutionally permissible length of

detention under section 236(c), and under the specific circumstances of Blake's detention and removal proceedings, he cannot make out a due process violation.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    Blake's Criminal History and Removal Proceedings**

Blake is a native and citizen of Jamaica who entered the United States on a non-immigrant visitor's visa in April 1994.  *See* Pet. ¶ 19; Return, Ex. 1 (Declaration of Deportation Officer La Wanda Charles, dated May 18, 2015) ¶ 4.  Since arriving in the United States, Blake has been convicted of several offenses.  *See* Pet. ¶ 20-21.  In June 2007 and again in January 2008, Blake was convicted in Yonkers City Court in New York of trademark counterfeiting.  *See* Pet. ¶ 21; Return, Ex. 1 ¶¶ 5-6.  In 2009, based on those two convictions, and on the fact that Blake had remained in the United States past the expiration of his non-immigrant visa, ICE commenced removal proceedings against Blake.  *See* Pet. ¶ 22; Return, Ex. 1 ¶ 7.  In February 2011, an Immigration Judge ("IJ"), acting in his discretion, adjusted Blake's status to lawful permanent resident, granted him a waiver of inadmissibility, and terminated the removal proceedings.  *See* Pet. ¶ 23; Return, Ex. 1 ¶ 8.

Less than two years later, on October 3, 2012, Blake was convicted in Yonkers City Court of criminal possession of a controlled substance in the third degree.  *See* Pet. ¶ 25 & Ex. E (Certificate of Disposition).  He had been arrested in connection with that offense on April 18, 2012, and was detained until April 27, 2012, when he was released on his own recognizance. *See id.*  Blake received a conditional discharge in connection with his conviction.  *See id.*

On the basis of Blake's October 2012 conviction, ICE arrested him on September 25, 2014, and served him with a Notice to Appear ("NTA"), the charging document that is used to commence removal proceedings.  *See id.* ¶ 29 & Ex. T (Notice to Appear).  The NTA alleges that the narcotics offense for which Blake was convicted renders him removable pursuant to INA §

237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i) (controlled substance violation).  *See id.*, Ex. T at 3. ICE determined that Blake is subject to mandatory detention without bond under section 236(c). *See id.*, Ex. T at 4 (Notice of Custody Determination).  ICE detained Blake at the Hudson County Jail in New Jersey.  *See* Return, Ex. 2 (Notice to EOIR: Alien Address).

On October 7, 2014, Blake appeared with his attorney before the IJ presiding over his removal proceedings for his first master calendar hearing, and the IJ adjourned the matter to allow Blake's attorney time to prepare his case.  *See* Return, Ex. 1 ¶ 11.  On December 1, 2014, Blake filed a motion to terminate the removal proceedings, which ICE opposed.  *See id.* ¶ 12. On December 8, 2014, Blake filed a motion seeking a custody determination.  *See id.* ¶ 13.

Blake appeared with his attorney for his second master calendar hearing on December 10, 2014.  *See id.* ¶ 14.  At the hearing, the IJ denied Blake's motion to terminate the proceedings and sustained the charges of removability contained in the NTA.  *See id.*  The IJ adjourned the proceedings so that Blake's attorney could file applications for relief from removal.  *See id.*

Consistent with his holding during the December 10, 2014, conference, on January 20, 2015, the IJ issued a written decision holding that (i) ICE was substantially likely to establish Blake's removability based on his 2012 conviction; (ii) owing to his 2012 conviction, Blake was properly subject to mandatory detention without bond under section 236(c); and (iii) therefore, the IJ lacked authority to provide him with a bond hearing.  *See* Pet., Ex. A (Memorandum Decision of the IJ, dated Jan. 20, 2015).

Blake appeared with his attorney for a third master calendar hearing on February 20, 2015.  *See* Return, Ex. 1 ¶ 16.  The IJ adjourned the matter so that Blake could file materials in support of his application for relief from removal.  *See id.*  Blake next appeared at his fourth master calendar hearing on April 8, 2015.  *See id.* ¶ 17.  Over ICE's objection, the IJ granted

Blake's request for a continuance so that he could submit further evidence in support of his application for relief. *See id.*

Prior to the scheduled date for Blake's fifth master calendar hearing, Blake's attorney moved to adjourn the hearing to collect and submit additional records in support for his application. *See id.* ¶ 18. At the hearing on May 13, 2015, over ICE's objection, the IJ continued the matter and scheduled Blake's next master calendar hearing for July 7, 2015. *See id.* ¶ 19.

**B.      Blake's Habeas Petition**

Blake filed the Petition on April 8, 2015, when he was temporarily present in Manhattan to attend his fourth master calendar hearing. *See* Pet. ¶ 16. He argues that he is not subject to mandatory detention under section 236(c) because ICE did not take him into custody immediately following his 2012 criminal conviction, *see id.* ¶¶ 60-66, and also because he did not serve a post-conviction custodial sentence in connection with that conviction, *see id.* ¶¶ 51-59. Blake further contends that, notwithstanding the IJ's decision to the contrary, he is not subject to mandatory detention because he ICE is not "substantially likely" to establish that his 2012 conviction was for a removable offense covered by section 236(c). *See id.* ¶¶ 36-46. Finally, Blake argues that his detention violates due process because (i) he can no longer be considered a flight risk or danger to the community, and (ii) the length of his detention is unreasonable. *See id.* ¶¶ 67-77.

## STATUTORY BACKGROUND

**A.      The Mandatory Detention Statute, INA § 236(c)**

ICE has the discretion to release some categories of aliens during the pendency of their removal proceedings. 8 U.S.C. § 1226(a). But aliens who have been convicted of certain enumerated offenses are subject to mandatory detention under section 236(c), which provides:

5

(c) Detention of criminal aliens

(1)    Custody

The Attorney General shall take into custody any alien who—

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [*sic*] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).  Further, under paragraph (2) of section 236(c), the Attorney General may release "an alien described in paragraph (1)" only in limited circumstances, not applicable here, where that release is necessary to protect a witness in a criminal matter.  *Id.* § 1226(c)(2).

Congress enacted section 236(c) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Div. C, Pub. L. No. 104-208, § 303(b), 110 Stat. 3009-586 (Sept. 30, 1996), in response to evidence that the immigration authorities were unable to remove many criminal aliens because they failed to appear for removal hearings, and also that criminal aliens released on bond often committed additional crimes before they could be removed.  *See Demore v. Kim*, 538 U.S. 510, 518-20 (2003).  In *Demore v. Kim*, the Supreme Court upheld detention without bond under section 236(c) as facially constitutional.  538 U.S. at 531.

**B.      The BIA's Interpretation of Section 236(c) in *Matter of Rojas***

Following IIRIRA, the BIA considered aliens' arguments that they were not subject to the new detention rules because they were not taken into ICE custody immediately "when . . . released" from criminal custody.  The BIA concluded that the Government's authority to detain criminal aliens did not depend on how soon they were taken into custody.  *See Matter of Noble*, 21 I. & N. Dec. 672, 677-81 (BIA 1997) (construing Transitional Period Custody Rules, which governed detention prior to section 236(c)'s effective date of October 9, 1998); *Matter of Rojas*, 23 I. & N. Dec. at 121-26 (construing section 236(c)).  And in *Matter of Rojas*, the BIA rejected an alien's claim that he was exempt from section 236(c) because he was not taken into immigration custody until two days after his release from state custody.  *Id.* at 117-18.

All three of the appellate courts to have examined this issue—the Third, Fourth, and Tenth Circuits—have agreed that the applicability of section 236(c) does not turn on the timing of ICE's detention.  In *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012), the Fourth Circuit considered a three-year delay between the state court's imposition of supervised probation and ICE's placement of the alien in mandatory immigration detention pending his removal.  *Id.* at 376.  The Fourth Circuit unanimously concluded that the alien "remained subject to mandatory detention" despite the delay in taking him into immigration custody.  *Id.* at 383.

Applying *Chevron* deference to the BIA's statutory interpretation in *Matter of Rojas*, the Fourth Circuit concluded that, "far from plain, [it is] indeed unlikely that 'when . . . released' [under INA § 236(c)] means 'at the moment of release, and not later.'"  *Id.* at 380; *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  The *Hosh* court reasoned that it was doubtful that Congress's clear intent was to deprive ICE of an opportunity to mandate a criminal alien's detention if the alien "was not immediately detained after release due to an administrative oversight or any other reason," a possibility the court

considered "strained." *Id.* at 380. The court further concluded that "the Government's supposed failure to comply with a statutory immediacy requirement—when the statute does not specify a consequence for such noncompliance—does not bestow a windfall upon criminal aliens." *Id.* at 383 (citing *United States v. Montalvo-Murillo*, 495 U.S. 711, 720 (1990) (there is "no reason to bestow upon the [detainee] a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous [detainees]" because a timing violation occurs)).

In *Sylvain v. Attorney General of the United States*, 714 F.3d 150 (3d Cir. 2013), the Third Circuit likewise held that section 236(c) applies to aliens who are not detained soon after their release from criminal custody. In that case, ICE detained the alien nearly four years after the alien pled guilty to a narcotics offense. *Id.* at 152. Relying on the Supreme Court's decision in *Montalvo-Murillo*, the Third Circuit determined that: (i) the text of section 236(c) does not tether ICE's authority to the timing of its assumption of custody over the alien, *see id.* at 157-59; and (ii) this reading comports with the strong public interest in the mandatory detention of certain classes of criminal aliens, *id.* at 159 (agreeing with *Hosh* that "'[t]he *Montalvo-Murillo* holding' is 'doubly persuasive in the instant setting'" (quoting *Hosh*, 680 F.3d at 382-83)); *see also id.* at 160-61 ("*Sylvain's* interpretation [of INA § 236(c)] would lead to an outcome contrary to the statutory design: a dangerous alien would be eligible for a hearing—which could lead to his release—merely because an official missed the deadline.").

In *Olmos v. Holder*, 780 F.3d 1313 (10th Cir. 2015), the Tenth Circuit also held that ICE need not detain aliens immediately upon their release from criminal custody. The Tenth Circuit thoroughly examined whether section 236(c) was ambiguous, and, after concluding that it was, determined that the BIA's interpretation in *Matter of Rojas* was reasonable and warranted

*Chevron* deference.  *Id.* at 1318-24.  The court also held that even if section 236(c) requires ICE to take an alien into custody immediately upon release from criminal custody, the Government does not lose its authority to detain the alien without a bond hearing merely because it misses that deadline.  *Id.* at 1324-26.  ("Congress's statutory command [that the Attorney General take custody of an alien once he was released from criminal custody] did not vanish as a result of the Attorney General's delay.").

Finally, numerous courts in this District have determined that the language of section 236(c) is ambiguous on the question of whether criminal aliens must be detained immediately upon release from criminal custody for the statute to apply, and that the BIA's interpretation of that language, which does not tether the applicability of the statute to the timing of an alien's immigration detention, warrants *Chevron* deference.  *See, e.g., Baker v. Johnson*, No. 15 Civ. 9500 (LAP), slip op. at 9-21 (S.D.N.Y. May 15, 2015); *Miller v. Decker*, No. 15 Civ. 471 (PKC), 2015 WL 1433276, at *6 (S.D.N.Y. Mar. 30, 2015); *Young v. Aviles*, No. 14 Civ. 9531 (JMF), 2015 WL 1402311, *2-6 (S.D.N.Y. Mar. 26, 2015); *Romero v. Shanahan*, No. 14 Civ. 6631 (KBF), 2014 WL 6982937, at *3-6 (S.D.N.Y. Dec. 10, 2014); *Debel v. Dubois*, No. 13 Civ. 6028 (LTS) (JLC), 2014 WL 1689042, at *3-5 (S.D.N.Y. Apr. 24, 2014); *Straker v. Jones*, 986 F. Supp. 2d 345, 352-56 (S.D.N.Y. 2013); *Johnson v. Orsino*, 942 F. Supp. 2d 396, 404-07 (S.D.N.Y. 2013); *Santana v. Muller*, No. 12 Civ. 430 (PAC), 2012 WL 951768, at *4 (S.D.N.Y. Mar. 12, 2012); *Guillaume v. Muller*, No. 11 Civ. 8819 (TPG), 2012 WL 383939, at *4 (S.D.N.Y. Feb 7, 2012); *Mendoza v. Muller*, No. 11 Civ. 7857 (RJS), 2012 WL 252188, at *3 (S.D.N.Y. Jan. 25, 2012); *Gomez v. Napolitano*, No. 11 Civ. 1350 (JSR), 2011 WL 2224768, at

*3 (S.D.N.Y. May 31, 2011); *Sulayao v. Shanahan*, No. 09 Civ. 7347 (PKC), 2009 WL 3003188, at *7 (S.D.N.Y. Sept. 15, 2009).[2]

## ARGUMENT

### BLAKE'S HABEAS PETITION SHOULD BE DENIED

The Court should deny Blake's petition.  Blake's conviction renders him deportable under 8 U.S.C. § 1227(a)(2)(B)(i), and qualifies as a predicate offense under section 236(c)(1)(B).  He is thus subject to mandatory detention under section 236(c) and *Matter of Rojas*, 23 I. & N. Dec. at 121, even though ICE did not take him into custody immediately following his release from criminal custody.  Because the BIA's interpretation of section 236(c) is a permissible interpretation of ambiguous language, it warrants deference under *Chevron*.  Second, because Blake was released from criminal custody after being detained in connection with his arrest and eventual conviction, he was "released" from custody as required by section 236(c).  Third, Blake's claim that he has a substantial challenge to his removability does not preclude his detention under section 236(c).  Finally, has not suffered a due process violation.  The Supreme Court has found section 236(c) to be constitutional when applied categorically to aliens, like Blake, who have been convicted of enumerated offenses, and the length of Blake's detention is reasonable under the specific facts and circumstances of his removal proceedings.

### A.     Blake is Subject to Mandatory Detention under *Matter of Rojas*

This Court reviews the agency's interpretation of section 236(c) in *Matter of Rojas* under the principles set forth in *Chevron*, 467 U.S. 837.  *See Hosh*, 680 F.3d at 378; *Johnson*, 942 F. Supp. 2d at 402.  First, the Court considers "whether Congress has directly spoken to the precise

---

[2]     The Government acknowledges that other courts in this District have declined to follow the BIA's interpretation of section 236(c), *see, e.g.*, Petition ¶¶ 62 (citing cases), but respectfully disagrees with those decisions.

question at issue." *Chevron*, 467 U.S. at 842. If Congress's intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. But if the statute is "silent or ambiguous with respect to the specific issue," the court must proceed to *Chevron*'s second step and determine whether the agency's interpretation is "based on a permissible construction of the statute." *Id.* at 843 (courts defer to agency interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute"). Here, the Court should defer to the BIA's interpretation of INA § 236(c) because it is a reasonable interpretation of an ambiguous statute.

### 1. Section 236(c) is Ambiguous

Section 236(c) is ambiguous because its language does not unequivocally resolve whether section 236(c) applies only to aliens who are immediately detained following release from criminal custody. *See Olmos*, 780 F.3d at 1322 ("Even with the statutory text, [statutory] clues, and canons [of interpretation], a reader cannot tell from the text alone whether aliens remain subject to mandatory detention after a gap in custody."); *Hosh*, 680 F.3d at 379 ("The meaning of § 1226(c) is not plain to us."); *Johnson*, 942 F. Supp. 2d at 405 ("[T]he Court cannot conclude that section 1226(c) is unambiguous.").

Section 236(c)(2) provides that the Attorney General may not release an "alien described in paragraph (1)" of the statute except in rare circumstances involving witness protection. Paragraph (1) lists four categories of aliens who are removable for enumerated criminal or terrorist offenses. 8 U.S.C. § 1226(c)(1)(A)-(D). Because no other part of paragraph (1) "describe[s]" an alien, the BIA reasonably determined that the reference to "an alien described in paragraph (1)" is susceptible to different interpretations, but most naturally encompasses only the four descriptive categories of aliens in section 236(c)(1)(A)-(D). *Matter of Rojas*, 23 I. & N. Dec. at 121. Thus, the "when . . . released" clause in paragraph (1) does not change the scope of

11

ICE's mandatory detention obligation in paragraph (2), because it does not "describe[]" an alien; rather, it describes the earliest time at which ICE's duty to detain a criminal alien described in subparagraphs (A) through (D) may arise.  *See id.*

Moreover, the "when . . . released" clause does not necessarily limit ICE's obligation to a unique point in time.  To be sure, some district courts have read "when . . . released" as a directive to ICE to assume custody of certain aliens precisely "at the time that" or "as soon as" they are released from criminal custody, and no later.  *See, e.g.*, *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 540-43 (S.D.N.Y. 2014).  But that phrase could also specify that ICE may become responsible for detaining aliens once they are released from the custody of another authority, and not before.  *Compare* 8 U.S.C. § 1226(c) *with* 8 U.S.C. § 1228(a)(3) (prohibiting "removal of any alien sentenced to actual incarceration, before release from the penitentiary or correctional institution where such alien is confined"); 8 U.S.C. § 1231(a)(4)(A) (providing that ICE "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment"); *see also Hosh*, 680 F.3d at 380 (explaining that "'when' can also be read to mean the temporally broader 'at or during the time that,' 'while,' or 'at any or every time . . . '"); *Johnson*, 942 F. Supp. 2d at 405 ("[T]he phrase 'when the alien is released' reasonably could be interpreted to mean either 'at the time that the alien is released' or 'at or during the time that the alien is released.'").  Under this latter reading, criminal aliens described in subparagraphs (A) through (D) are subject to being taken into custody "at any time" following their release.  *See Gomez*, 2011 WL 2224768, at *3.

In sum, while the BIA's reading of section 236(c) is not the only possible interpretation, there can be no question that the statute is ambiguous because it is susceptible to different readings.  *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 989

(2005) (statute is ambiguous when its terms are subject to "two or more reasonable ordinary usages"). Accordingly, the Court should proceed to *Chevron*'s second step.

### 2. *Matter of Rojas* Warrants Deference Because the BIA's Interpretation of Section 236(c) is Reasonable

This Court should defer to the BIA's interpretation of section 236(c). *See Hosh*, 680 F.3d at 380. To do so, the Court "need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.1. Rather, the agency's construction need only be reasonable. *Id.* at 843.

The BIA's interpretation of section 236(c) is reasonable, and consistent with Congress's goals in enacting the provision. IIRIRA expanded mandatory detention because Congress was "frustrated with the ability of aliens, and particularly criminal aliens, to avoid deportation if they were not actually in [ICE] custody when their proceedings were completed." *Matter of Rojas*, 23 I. & N. Dec. at 122 (citing S. Rep. No. 104-48). The evidence before Congress indicated that "more than 20%" of non-detained criminal aliens failed to appear for their deportation hearings, and even more criminal aliens continued to commit crimes after being identified as deportable. *Demore*, 538 U.S. at 518-19. Before IIRIRA, ICE had "broad discretion to conduct individualized bond hearings" and to release criminal aliens. *Id.* at 519. The result was that aliens continued to abscond prior to their hearings, leading Congress to conclude that "even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight." *Id.* at 520. Therefore, it was "clearly reasonable for the [BIA] to conclude that extinguishing ICE's authority to act if a single point in time is missed did not further Congress's stated goal of detaining criminal aliens without bond during removal

proceedings, even if the alien was not detained immediately upon his release from criminal confinement." *Hosh*, 680 F.3d at 380-81.

Given that Congress enacted section 236(c) specifically to prevent criminal aliens from remaining at large, it does not make sense to conclude that detention becomes non-mandatory if ICE does not or cannot take an alien into custody quickly enough. *See, e.g.*, *Hosh*, 680 F.3d at 381 ("[W]e cannot conclude that Congress clearly intended to exempt a criminal alien from mandatory detention and make him eligible for release on bond if the alien is not *immediately* taken into federal custody.") (emphasis in original); *Young*, 2015 WL 1402311, at *4 ("It would be naïve at best to conclude that Congress intended to reward the government's failure to comply with one obligation by exempting it from another.").

Indeed, Congress's intention in IIRIRA was to expand the categories of criminal aliens ineligible for bond. *Demore*, 538 U.S. at 519-20. An interpretation of section 236(c) that would exempt certain criminal aliens from mandatory detention simply because they were not taken into custody quickly enough would "run[] counter to this congressional intent." *Gomez*, 2011 WL 2224768, at *3; *see also Matter of Noble*, 21 I. & N. Dec. at 681 (it would be incongruous to construe IIRIRA's stricter mandatory detention rules "in a way that permits the release of a subgroup of criminal aliens (based on the wholly fortuitous date of release from incarceration) under a more lenient standard"). Moreover, retaining authority to detain such aliens as a matter of discretion under section 236(a) does not resolve this concern; ICE always had discretion to detain criminal aliens or release them on bond, but Congress enacted section 236(c) precisely because aliens released on bond continued to abscond and reoffend despite that screening mechanism. *Demore*, 538 U.S. at 520.

Furthermore, Congress was aware when it enacted section 236(c) that ICE's inability to detain criminal aliens was often attributable to factors outside ICE's control, such as local law enforcement officials' failure to identify criminal aliens or notify the immigration authorities in advance of their release.  S. Rep. No. 104-48, at 1.  Congress could not have intended for such lapses in communication or lack of resources to be the determinative factor in whether mandatory or discretionary detention applies.  *See Montalvo-Murillo*, 495 U.S. at 720 (where no single party is responsible for missing a detention-related deadline, there is "no reason to bestow upon the [detainee] a windfall and to . . . mandate release of possibly dangerous [detainees]" because a timing violation occurs); *see also Matter of Rojas*, 23 I. & N. Dec. at 128 (Moscato, Board Member, concurring in part and dissenting in part) ("It is difficult to conclude that Congress meant to premise the success of its mandatory detention scheme on the capacity of the [Government] to appear at the jailhouse door to take custody of an alien at the precise moment of release.").

Finally, the BIA reasonably observed the potential anomalies that could result from a contrary rule.  Under Blake's interpretation, two aliens convicted of the same criminal offense would be subject to different detention rules based solely on how quickly ICE was able to assume custody.  *Matter of Rojas*, 23 I. & N. Dec. at 124 (reasoning that it would be "inconsistent" to interpret the statute in a manner that "permits the release of some criminal aliens, yet mandates the detention of others convicted of the same crimes, based on whether there is a delay between their release from criminal custody and their apprehension by [ICE]"). Congress nowhere suggested that criminal aliens become less dangerous or less of a public concern by virtue of such a delay, or that criminal aliens should be able to avoid mandatory detention if they are fortuitous enough to avoid, for a time, such detention.  *See Guillaume*, 2012

WL 383939, at *5 ("[I]t stands to reason that [Congress] would create a system of mandatory pre-removal detention that applies to more than those criminal aliens detained within a day or a few days of their release from criminal custody."). Rather, because an individual's status as a removable criminal alien is "not dependent on when an alien is taken into immigration custody," and the "concern that criminal aliens will fail to appear at removal proceedings if they are released on bond is still present even if the individual has spent some time in the community after being released from [criminal] custody," it is "not unreasonable to treat all criminal aliens in the same manner and require their detention" once a removal proceeding has been commenced. *Mendoza*, 2012 WL 252188, at *5.

The BIA's *Matter of Rojas* interpretation, which takes all these considerations into account, thus represents a "reasonable accommodation of conflicting policies that were committed to the agency's care by the statute," and warrants deference. *Chevron*, 467 U.S. at 845.

### 3. The Government Has a Continuous Statutory Duty to Impose Mandatory Detention Despite a Gap in Custody

Regardless of whether the statutory language is ambiguous, nothing in the language of section 236(c)(2) makes its requirements with respect to detention dependent on the satisfaction of any timing requirement in section 236(c)(1). *See Olmos*, 780 F.3d at 1324-26 ("Congress required the Attorney General to impose mandatory detention for aliens . . . convicted of certain crimes; even if the Attorney General failed to fulfil this requirement in a timely manner . . . , the statutory requirement would not have disappeared. The requirement would have remained, and the Attorney General would eventually have had to detain [such an alien] under § [236](c)."); *Sylvain*, 714 F.3d at 157 ("The text [of INA § 236(c)] does not explicitly remove that authority [to take aliens into mandatory detention] if an alien has already left custody."). In this regard, as the Third and Tenth Circuits reasoned in *Sylvain* and *Olmos*, the BIA's interpretation of

section 236(c) is consistent with the general rule that, even where a statute imposes on the Government a duty to act by a certain time, the Government does not lose the authority to act after that deadline absent a clear indication that Congress intended that result. *Olmos*, 780 F.3d at 1324-26; *Sylvain*, 714 F.3d at 157-58.

Section 236(c) does not specify any consequence if ICE does not detain an alien immediately upon release. *See Sylvain*, 714 F.3d at 157. Thus, absent any indication that Congress intended otherwise, ICE is not deprived of its power or excused from its duty under section 236(c)(1) to take the alien into custody if it does not act immediately. *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 94-95 (1993) (agency administering law is charged with ascertaining Congress's intent by examining "the language of the governing statute . . . looking to the provisions of the whole law, and to its object and policy").

Accordingly, regardless of whether section 236(c) requires "immediate" detention, ICE maintains a continuing duty to detain Blake under section 236(c), and that duty did not end merely because ICE did not immediately apprehend Blake.

**B.     Blake Was "Released" from Custody for Purposes of Section 236(c)**

Blake claims that he is not subject to § 236(c) because he never received a custodial sentence in connection with either of his underlying criminal convictions, and therefore he was never "released" from custody. *See* Pet. ¶¶ 51-66; Pet. Br. at 16-22. But in both *Matter of West*, 22 I. & N. Dec. 1405 (BIA 2000), and *Matter of Kotliar*, 24 I. & N. Dec. 124 (BIA 2007), the BIA held that the qualifying "release" for purposes of mandatory detention can include release from an arrest preceding a conviction for a removable offense. *See Matter of West*, 22 I. & N. Dec. at 1410 (recognizing that the term "release" has a broad range of meanings: "'Release' in this context can also refer to release from physical custody following arrest, as is the case with the respondent"); *Matter of Kotliar*, 24 I. & N. Dec. at 125 ("[W]e have held that an alien who is

released from criminal custody (including from an arrest preceding a conviction, as the respondent implicitly conceded took place here) . . . is subject to mandatory detention pursuant to [INA § 236(c)] . . . .").  The Third Circuit has followed the BIA's reasonable interpretation. *Sylvain*, 714 F.3d at 161 (alien's "release from the 2007 arrest that led to his conviction and conditional discharge certainly fulfilled the release requirement [of § 236(c)]"); *Desrosiers v. Hendricks*, 532 F. App'x 283, 285-86 (3d Cir. 2013); *Gonzalez-Ramirez v. Sec'y of U.S. Dep't of Homeland Sec.*, 529 F. App'x 177, 179-81 (3d Cir. 2013).  Blake thus falls within section 236(c) because he was arrested in connection with the conviction that renders him removable, and he spent more than a week in custody before being convicted and released on his own recognizance.

The BIA's interpretation of the term "released" is entitled to deference and should control.  First, it reflects the plain language of the statute, which provides for mandatory detention "without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be released again for the same offense."  8 U.S.C. § 1226(c)(1).  It also comports with Congress's intent in enacting section 236(c) to provide for detention without bond for criminal aliens who are removable for having committed certain removable offenses—an intent that the Supreme Court has endorsed as within Congress's authority.  *See Demore*, 538 U.S. at 518-20, 531.

Because the Court should defer to the BIA's determination that release from pre-conviction arrests satisfies the "release" requirement in section 236(c), it should decline to follow decisions in this District requiring the imposition of a post-conviction custodial sentence in order for mandatory detention to apply.  *See, e.g.*, *Straker*, 986 F. Supp. 2d at 356-63; *Escrogin v. Tay-Taylor*, No. 14 Civ. 2856 (RJS), 2015 WL 509666, at *4-6 (S.D.N.Y. Feb. 5, 2015); *Lora v. Shanahan*, 15 F. Supp. 3d 478, 491-93 (S.D.N.Y. 2014); *Masih v. Aviles*, No. 14 Civ. 928 (JCF),

2014 WL 2106497, at *3-4 (S.D.N.Y. May 20, 2014).[3]  As a threshold matter, one consideration given weight in *Straker*—that if pre-conviction arrests may satisfy the release requirement, then, in the court's view, "a mere arrest for a qualifying offense" would problematically also trigger mandatory detention—is incorrect because it fails to recognize that certain provisions in section 236(c) require a *conviction* for a qualifying offense.  *See Straker*, 986 F. Supp. 2d at 358.  In other words, because an alien would not fall within the mandatory detention statute if he were not ultimately convicted of an offense under the provisions that render an alien removable based on a conviction, *Straker* (and Blake's argument) rests on a flawed premise.

Contrary to the reasoning in *Straker*, ICE's obligation to detain a criminal alien pursuant to section 236(c) does not arise until the latter of his conviction *or* his release from non-DHS custody, *i.e.*, when the last element is met.  Although in many cases, the release occurs after the conviction and service of the sentence, the statute does not require that the release occur after the conviction.  Furthermore, *Straker*'s analysis of the BIA's interpretation of "released" is internally inconsistent: for example, while it rejects *Matter of West*'s determination that pre-conviction arrests can satisfy the "release" requirement, *see* 986 F. Supp. 2d at 358-59, it nevertheless defers to *West* on the related proposition that the term "release" connotes release from some form of physical custody, *see id.* at 360-61.

Relatedly, no case law supports *Straker*'s premise that "a mere arrest for a qualifying offense" would trigger ICE's mandatory detention obligations.  *See id.* at 358.  Rather, in each of the cases considered in *Straker*, and in *Straker* itself, there was a *conviction* that gave rise to mandatory detention.  *See Matter of West*, 22 I. & N. Dec. at 1406; *Matter of Kotliar*, 24 I. & N.

---

[3] The courts in *Escrogin*, *Lora*, and *Masih* deferred to the "released" analysis in *Straker*.

Dec. at 124; *Matter of Rojas*, 23 I. & N. Dec. at 117-18; *Straker*, 985 F. Supp. 2d at 348. Similarly, Blake's detention is based on his conviction, not "a mere arrest."

In addition, although *Straker* properly considered the congressional goals in enacting section 236(c) when deferring to the BIA's interpretation in *Matter of Rojas*, *see* 986 F. Supp. 2d at 353-56, it failed to take these goals into account when considering the "release" requirement. Just as an interpretation of section 236(c) that premises ICE's mandatory detention authority on the timing of its assumption of custody would not comport with the "evident congressional intent that aliens who had committed certain aggravated felonies merited mandatory custody," *see id.* at 353 (citing *Demore*, 538 U.S. at 519), an interpretation that turns on the precise nature of an underlying sentence and periods of confinement—rather than the nature of the underlying conviction—likewise runs contrary to the statute's purpose. Were Blake and *Straker* correct, two aliens convicted of the same underlying removable offense enumerated in section 236(c) would be subject to differing detention schemes based solely on whether a judge sentenced them to a custodial or non-custodial sentence, or sentenced them to a period of incarceration for which they received credit for time served. This type of divergent outcome would frustrate Congress's intent in enacting the statute. *See Sylvain*, 714 F.3d at 160 ("Congress designed the statute to keep dangerous aliens off the streets." (citing *Demore*, 538 U.S. at 518-22)). Accordingly, the BIA's interpretation of section 236(c), which would properly subject Sutherland to mandatory detention consistent with his conviction, should govern the outcome here.

Further, Blakes's interpretation runs afoul of the rule of statutory construction that requires terms to be construed to comport with the statute as a whole. *See, e.g.*, *Matter of Rojas*, 23 I. & N. Dec. at 129. The purpose of section 236(c) is to prohibit the release of aliens who are removable based on their criminal conduct. *See Sylvain*, 714 F.3d at 160; *Nat'l Ass'n of Home*

*Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (directing courts to follow the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").  The statute's inclusion of aliens who have been sentenced to probation, or who have been released on parole or supervised release, makes clear that the statute is intended to have a broad reach, and thus subparagraphs (B) and (C) cover aliens who are removable based on their *convictions* rather than the vagaries of their resulting criminal confinement or the various ways convictions and confinement can be handled in state and federal criminal practice.  *See Demore*, 538 U.S. at 518-21.  Moreover, mandatory detention also applies to aliens who have *committed* certain inadmissibility offenses, even if they have not been convicted of a removable offense or have been in custody at all.  *See* 8 U.S.C. § 1226(c)(1)(A) and (D).  Accordingly, the statute extends to aliens who may not have been released from post-conviction confinement.

## C.    The Rule of Lenity Is Inapplicable

Because the BIA's interpretation of section 236(c) is entitled to *Chevron* deference, the Court should not apply the rule of lenity.  *See* Pet. ¶ 66; Pet. Br. at 28.  "[T]he rule of lenity is a last resort, not a primary tool of construction, and to invoke the rule, [a court] must conclude that there is a *grievous* ambiguity or uncertainty in the statute."  *Hosh*, 680 F.3d at 383 (citations and internal quotation marks omitted; emphasis in original).  Accordingly, the Fourth Circuit in *Hosh* refused to apply the rule to section 236(c).  *See id.* at 384 ("[T]he conditional requirements needed to invoke *Chevron* do exist, and we therefore rely on *Chevron* instead of the rule of lenity.").  No grievous ambiguity exists here.  *See Moskal v. United States*, 498 U.S. 103, 108 (1990) (statutes are not "ambiguous for purposes of lenity merely because it [is] *possible* to articulate a construction more narrow than that urged by the Government").

Furthermore, when lenity has been applied in immigration matters, it has typically been within the deportation context, "because deportation is such a drastic measure." *Hosh*, 680 F.3d at 384; *see also Duarte-Ceri v. Holder*, 630 F.3d 83, 90 (2d Cir. 2010) (interpreting derivative citizenship statute in favor of petitioner who had been ordered removed). By contrast, section 236(c) merely deals with pre-removal order detention. *See Hosh*, 680 F.3d at 384 ("a criminal alien in Hosh's position would be subject to deportation proceedings whether or not [section 236(c)] existed"). Accordingly, the Court should not apply the rule of lenity, but should instead apply the same two-part *Chevron* analysis employed by numerous courts in this District to find that Blake's detention is mandated by section 236(c).

## D. The Applicability of Section 236(c) Is Not Affected By Blake's Purported "Substantial Challenge to Removability"

Blake claims that he is not subject to detention under section 236(c) because his 2012 conviction does not fall within any of section 236(c)'s enumerated categories. *See* Pet. ¶¶ 36-46. But he has had an opportunity to pursue that argument in his removal proceedings, and since the IJ has determined that Blake's conviction falls within section 236(c), Blake is limited in this Court to challenging the statute itself, not whether his criminal conviction is covered by it.

An alien may seek a determination from the IJ that he is "not properly included" in the mandatory detention category because ICE is "substantially unlikely to prevail" on the removal charge that subjects him to that category, *see* 8 C.F.R. § 1003.19(h)(2)(ii); *Matter of Joseph*, 22 I. & N. Dec. 799, 807 (BIA 1999). If the IJ rules against the alien, he may appeal this determination to the BIA. *See* 8 C.F.R. § 1236.1(d)(3). These bond proceedings are separate from the underlying removal proceedings, *see id.* § 1003.19(d), and thus an alien does not need to wait for his removal proceedings to be resolved before receiving a ruling regarding his detention. Here, Blake has already challenged his inclusion in the mandatory detention statute

22

based on his 2012 conviction, and the IJ found that he was properly detained under section 236(c).  *See* Pet., Ex. A.

Moreover, Blake's claim is also unsuccessful insofar as he alleges that he is not subject to section 236(c) because he has a "substantial challenge to removability."  *See* Pet. ¶¶ 70-71.  The Supreme Court's holding in *Demore*, which found section 236(c) facially constitutional, is not limited to aliens who concede removability.  First, the Supreme Court declined to hold that mandatory detention should not apply to an alien who may not ultimately be removed.  *See Demore*, 538 U.S. at 522 n.6.  Rather, the Court expressly stated that mandatory pre-removal order detention "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, *if ordered removed*, the aliens will be successfully removed."  538 U.S. at 528 (emphasis added).  As the Supreme Court explained, when instituting mandatory detention for certain criminal aliens, "Congress had before it evidence suggesting that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully."  *Id.; see also Sylvain*, 714 F.3d at 159.  Accordingly, even if those criminal aliens detained under section 1226(c) are not "ultimately deported," their mandatory pre-removal order detention continues to serve a legitimate purpose, and such detention does not violate those aliens' constitutional rights.  *See Romero*, 2014 WL 6982937, at *6; *Charles*, 2014 WL 3765797, at *9; *Gayle v. Johnson*, 4 F. Supp. 3d 692, 706-12 (D.N.J. 2014).

## E.    Blake's Detention Does Not Violate Due Process

Finally, the Court should reject Blake's arguments that his detention violates due process.  *See* Pet. ¶¶ 67-77.  First, Blake's claim that his detention under 236(c) is unconstitutional because it purportedly does not bear a reasonable relationship to its regulatory goals has been

rejected by the Supreme Court.  In *Demore*, the Supreme Court held that because detention is "part of the means necessary to give effect" to the INA's removal provisions, mandatory detention without a bond hearing under section 236(c) during removal proceedings is facially constitutional.  538 U.S. at 531.  The Supreme Court further held that Congress has the authority to enact statutes regulating the detention of aliens that apply to categorical classes of aliens.  *See id.* at 528.  In enacting section 236(c), Congress determined that individualized hearings for aliens who, like Blake, are removable under certain provisions of the INA, were not an effective means of protecting the public from recidivist criminals and ensuring such aliens were actually removed upon the entry of a final removal order.  *See id.* at 518-520, 528.  Accordingly, the Supreme Court held that commission of one or more of the serious removable offenses enumerated in section 236(c) serves, in Congress's view, as a proxy for flight risk and dangerousness, without any need for an individualized showing on those factors.  *See id.* at 523-28.  Thus, "the Supreme Court has flatly rejected [Blake's] position."  *Romero*, 2014 WL 6982937, at *6.

Second, the length of Blake's detention does not raise due process concerns.  Blake suggests that his detention violates due process because it has exceeded the length of time considered by the Supreme Court in *Demore*, and the time that the Supreme Court found to be presumptively reasonable in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), which addressed the wholly different issue of post-removal order detention.  *See id.*  But although the period of detention at issue in *Demore* was six months, the Supreme Court's decision did not set an outer limit for what constitutes a permissible period of detention.  *See Demore*, 538 U.S. at 529-30; *see also Diop v. ICE*, 656 F.3d 221, 234 (3d Cir. 2011) (adopting a "fact-dependent inquiry" rather than a "one-size-fits-all approach" to the permissible length of detention).  Moreover, in *Demore*,

the Supreme Court rejected the petitioner's attempt to apply the holding of *Zadvydas*, which found post-removal order detention for up to six months to be presumptively reasonable, to detention under section 236(c).  *Demore*, 538 U.S. at 528 ("*Zadvydas* is materially different from [petitions brought under section 236(c)].").

Accordingly, courts in this Circuit have upheld periods of detention that are longer than Blake's.  *See, e.g.*, *Baker*, No. 14 Civ. 9500, slip op. at 23-35; *Debel*, 2014 WL 1689042, at *5 (18-month detention); *Johnson*, 942 F. Supp. 2d at 408-11 (15-month detention); *Johnson v. Phillips*, No. 10-CV-480 (HBS), 2010 WL 6512350, at *6-7 (W.D.N.Y. Dec. 20, 2010) (17-month detention); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (39-month detention); *Andreenko v. Holder*, No. 09 Civ. 8535 (CM)(JCF), 2010 WL 2900363, at *3-4 (S.D.N.Y. June 25, 2010) (13-month detention); *Adler v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 4093 (SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) (15-month detention).  In doing so, these courts have looked to specific facts concerning the petitioner's detention and removal proceedings that shed light on the reasonableness of ongoing detention.  *See, e.g., Johnson*, 942 F. Supp. 2d at 408-09 (considering, *inter alia*, the status of petitioner's removal proceedings, including the fact that petitioner sought relief from removal that extended the length of those proceedings); *Adler*, 2009 WL 3029328, at *2 (noting lack of evidence "that the government has dragged its feet" in prosecuting petitioner's removal proceedings, and stating that "[a]lthough it is Adler's right to seek relief from deportation, the delays caused by his motions should not be attributed to the government"); *see also Demore*, 538 U.S. at 530-31 although respondent was detained for longer than six months, "respondent himself had requested a continuance of his removal proceeding").

Here, then, the mere length of Blake's detention, without further inquiry into the reasons for the length of detention, does not establish a due process violation.  And indeed, there is no evidence that Blake's proceedings have been prolonged by unreasonable government action, nor is there evidence "that the government has dragged its feet" in prosecuting Leon's removal. *Adler*, 2009 WL 3029328, at *2.  To the contrary, his hearings have repeatedly been adjourned at his request or for his benefit, to allow him to pursue relief from removal.  *See* Return, Ex. 1 ¶¶ 11-19.  Although Blake has every right to pursue relief from removal, this Court should not allow him to "rely on the extra time resulting [from his pursuit of legal remedies] to claim that his prolonged detention violates substantive due process."  *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991); *see also Johnson*, 942 F. Supp. 2d at 408-09.

## CONCLUSION

For the foregoing reasons, the Petition should be denied.

Dated:   New York, New York
      May 18, 2015

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York,
                              *Attorney for Respondents*

            By:     /s/ Christopher Connolly
                              CHRISTOPHER CONNOLLY
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.: (212) 637-2761
                              Fax: (212) 637-2786
                              E-mail: christopher.connolly@usdoj.gov